Argued June 15; affirmed July 24, 1934

## DICKSON v. KING
(34 P. (2d) 664)

Leo J. Hanley, of Portland (Cookingham & Hanley, of Portland, on the brief), for appellant.

William H. Morrison, of Portland (Barry & Morrison, of Portland, on the brief), for respondent.

ROSSMAN, J. As is evident from the foregoing, this appeal is based upon a single assignment of error which challenges the propriety of the order sustaining the defendant's motion for a new trial. January 1, 1932, at about 6 o'clock p. m., the plaintiff, as a non-paying guest of the defendant, was riding in his automobile on a journey from the city of Portland through the town of Beaverton. When the car was near the city limits of Beaverton, proceeding along a thoroughfare known as the Canyon Road highway, and approaching the intersection of that highway with Cedar street, the headlights of a car operated by one Curletto were observed on Cedar street slightly south of the south line of the Canyon road. At that moment the defendant's car was 150 or 200 feet distant from the intersection, and the Curletto car was in the act of starting. The defendant, believing that he could pass through the intersection safely, proceeded, but before his car had passed through the intersection a collision occurred between the two vehicles. The plaintiff was unable to say which car struck the other, but the defendant and the other two occupants of his car testified that his car was struck upon the left rear fender. In this collision the plaintiff sustained the injuries for which she seeks redress. Section 55-1209, Oregon Code 1930, permits no recovery by a non-paying guest against his host "unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his

reckless disregard of the rights of others". The complaint contains nine specifications of the charge of gross negligence as follows: (1) That the defendant drove his car "at a high and dangerous rate of speed * * * to wit, at more than thirty-five miles per hour"; (2) that he drove his car "at such a high and dangerous rate of speed that it was dangerous to the life and limb of the plaintiff"; (3) that he failed to yield the right of way to the Curletto car; (4) that his car was not under control; (5) that he failed to sound his horn upon approaching the intersection; (6) that he neglected to maintain a proper lookout; (7) that he failed to exercise due care; (8) that he entered the intersection without being reasonably certain that he could proceed through in safety; and (9) that in proceeding he "disregarded all of the rights and safety of others and particularly this plaintiff".

To sustain these charges, the plaintiff relies upon portions of the testimony which indicate that the defendant was operating his car at a speed of from fifty to fifty-five miles per hour; that he was driving within the town of Beaverton; that he was approaching a much used intersection; that when he was 150 feet from the intersection he observed the headlights of the Curletto car; that, instead of applying his brakes, he stepped on the accelerator; that when his wife observed the Curletto car she cried out "Oh! Matt"; that after the defendant observed the Curletto car he momentarily glanced to the right for the purpose of observing that portion of Cedar street; and that when he realized the imminence of a collision he took his hands off the steering wheel and pulled his overcoat over his head.

All portions of the above-reviewed testimony which imputed negligence to the defendant were contradicted

by other testimony. The plaintiff was the only witness who claimed that the defendant was driving faster than thirty miles per hour, and her statements were contradicted, not only by the testimony of the defendant and the other two guests who were riding in the car but also by a written document which a witness testified the plaintiff signed after the accident wherein she declared: "We were not driving fast". We mention these facts for the purpose of showing that not only the pleadings but also the evidence stressed the speed element of the charge made against the defendant.

The testimony does not clearly indicate the character of the community through which the defendant's car was passing. A plat prepared by the recorder of the town of Beaverton and produced by the plaintiff shows only two houses and a filling station within a distance of several hundred feet of this intersection. No other structures of any kind are indicated on the plat. Although the complaint avers that the aforementioned intersection is within the boundaries of the town of Beaverton, the testimony introduced by the plaintiff fails to indicate that fact. The defendant gave the only direct testimony upon that issue, and from his testimony we quote the following: "It was within the limits. It is not in the city. It is off on the Canyon Highway. It is on the back street of Beaverton. It is Beaverton but not in the city limits   *   *   *   it is in the city proper, but not through the business section anyway." Possibly he meant that the intersection is very near to the municipal boundaries. The foregoing evidence and other occasional references to the place surrounding the intersection indicate quite clearly that the intersection is not within a "business" or "residence" district as those terms are defined by our state motor vehicle law, 1931 Session Laws,

chapter 360, section 1. And since no one contends that any schoolhouse stood in the vicinity of the intersection, we assume that there was none. The following excerpt taken from the instructions is the portion thereof wherein the trial judge delineated the rules of law applicable to the lawful rate of speed:

"You are instructed that it is provided by the statute in Oregon that no person shall drive an automobile upon the highway in this state at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazards at intersections and any other conditions then existing. Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of his car and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon entering the highway in compliance with the legal requirements and to the duty of drivers and other persons using the highway to exercise due care."

The above instruction is taken virtually verbatim from the first two paragraphs of 1931 Session Laws, chapter 360, section 20, which makes provision for a basic rule governing the speed at which a motor vehicle may be driven upon the public highways. The paragraph which immediately follows that one prescribes a penalty of not more than five days in jail and a fine of $25 for a violation of the above rule. The next paragraph provides that a motorist who, in addition to violating the basic rule, also violates the indicated speeds provided in the following portions of this section of our laws, shall be subject to a penalty of not exceeding ten days in jail and a fine of $100. The indicated speeds are 15 miles per hour when passing schoolhouses and railway grade crossings where the driver's view is obstructed, twenty miles per hour

in business districts and at highway intersections where the driver's view is obstructed, twenty-five miles per hour in residence districts, at railway grade crossings where the driver's view is not obstructed, and in public parks, and "forty-five miles per hour outside of business or residence district except as otherwise provided by this Act".

■ In sustaining the defendant's motion for a new trial, the circuit judge expressed the belief that the omission from his instructions of mention of the indicated speeds rendered them unfair to the defense. The efforts of a trial judge to give the jury instructions which will enable them to understand clearly the principles of law applicable to the issue submitted for their determination should be viewed with complacency when attacked by an appeal challenging an order granting a new trial, for, as was said in *Cicrich v. State Industrial Accident Commission*, 143 Or. 627 (23 P. (2d) 534) : "It requires a clearer case or much stronger showing to authorize a reversal of the order granting a new trial than it does to reverse an order overruling a motion therefor". It will be observed from the provisions of our traffic law aforementioned that a violation of the basic rule regulating speed subjects the violator to a penalty, and that a violation of that rule, aggravated by an accompanying violation of the indicated speeds applicable to the district in which he is driving, subjects him to a much greater penalty; but when he drives faster than the indicated speed without violating the basic rule he is subject to no penalty. In other words, one can drive through a residence district at a speed greater than the indicated speed without being subject to a penalty. But even though he is driving within the indicated speed, he subjects himself to a penalty if he is driving faster than the basic rule

permits. Our traffic law, therefore, sets no arbitrary limitation upon speed by designating in numerals maximum speeds. Speed, under our law, is an aggravating circumstance which affects the penalty, but the subject-matter of the offense is the absence of due care. The distinction of which we have taken note is one that pertains to the criminal features of the driver's conduct but has no application to the tortious features of it when the doctrine of negligence is invoked and accepts the standards fixed by the statute as the yardstick prescribing the measure of care exacted by the motorist. However, we deem it reasonable to construe the indicated speeds as a legislative determination that under ordinary circumstances it is not only permissible but also safe to drive within their limitations. A knowledge of these limitations is, therefore, helpful in understanding the meaning of the basic rule. We come now to an application of these conceptions of the statute to the instructions that were given, and to a determination of the problem whether the trial judge properly allowed the motion for a new trial. His instructions which stated the basic rule, being expressed as they are in the legal phraseology of the statute, are highly significant to those accustomed to legal literature, but in all likelihood tedious to the ear of the layman and of but little practical help. To the layman the indicated speeds are charged with significance. Some on the jury may have believed that the basic rule would not countenance a speed of thirty miles per hour, that being the rate at which the defendant's car was traveling, according to his testimony. But such a juror would have revised his beliefs had he become acquainted with the fact that the indicated speed for the open country, under favorable conditions, is forty-five miles per hour. He would still have applied the basic

rule and would still have returned a verdict for the plaintiff had he found that, notwithstanding the defendant was proceeding at thirty miles per hour, he failed to exercise due care. Thus, the instructions are subject to the criticism that they expressed only a half truth. We believe that under the facts disclosed by the testimony the defense was, in all likelihood, prejudiced through the failure of the instructions to mention the last of the indicated speeds, especially since the cause of action is predicated upon charges of gross negligence.

The above being our conception of the meaning of our traffic law, we are of the opinion that the court did not err when it sustained the motion for a new trial. The order from which the appeal has been taken is affirmed.

CAMPBELL, BELT and BAILEY, JJ., concur.