Argued September 4; affirmed September 24; rehearing denied
November 19, 1935

# DICKSON *v.* KING

(49 P. (2d) 367)

*Leo J. Hanley,* of Portland (Cookingham & Hanley, of Portland, on the brief), for appellant.

*W. H. Morrison,* of Portland (Barry & Morrison, of Portland, on the brief), for respondent.

BELT, J. This is a personal injury action brought by a guest to recover damages arising out of an automobile collision which occurred within the corporate limits of the city of Beaverton. The first trial resulted in a verdict for the plaintiff, but on motion of the defendant the judgment was set aside and a new trial ordered on account of the failure to instruct upon indicated speed limit of an automobile as provided by statute. On appeal to this court the order granting a new trial was affirmed: *Dickson v. King,* 147 Or. 638 (34 P. (2d) 664). On the second trial the jury returned a verdict in favor of the defendant and judgment was entered accordingly. Plaintiff appeals.

The motions for new trial and arrest of judgment are based upon the proposition that the trial court had no jurisdiction of the cause for the reason that the trial was had before the mandate of the supreme court affirming the order granting a new trial was entered in the journal of the circuit court. Appellant relies upon section 7-513, Oregon Code 1930 which, so far as material herein, provides as follows:

"1. Upon an appeal to the supreme court, its decisions shall be entered in the journal, and the cause

remitted by mandate to the court below for further proceedings as therein directed. If a new trial be ordered, upon the receipt of the mandate by the clerk of the court below, the decision and order shall be entered in the journal and thereafter the cause shall be deemed pending and for trial in such court, according to the directions of the appellate court; * * *''

In view of the above statutory provision it was undoubtedly irregular to proceed with the trial before the mandate of this court was entered in the journal, but we think such objection does not go to the jurisdiction of the court. The purpose of a mandate is to apprise the lower court of the disposition of the cause on appeal and to direct proceedings in accordance therewith. In the instant case the mandate was on file with the clerk of the circuit court at the time the trial was commenced. It was the duty of the clerk upon its receipt to enter the same in the journal. Neither he nor the court below had any discretion in the matter. Such is the plain mandate of the statute. Plaintiff was seeking to recover damages. When counsel for plaintiff proceeded with the trial he knew as well as did counsel for defendant that the mandate had not been entered in the journal. It will not do to speculate upon the verdict and then, when the same is adverse, to complain about the failure to make the journal entry. It is a plain case of waiver: *State v. Lawrence,* 148 Or. 383 (36 P. (2d) 784) ; 4 C. J. 1208, 1211.

The second main contention of the appellant is that the court erred in instructing the jury as follows:

"You are instructed if you find the defendant was, at the time and place of said accident, guilty of ordinary negligence and as a result of such ordinary negligence, he was placed suddenly in a position of imminent peril without sufficient time to consider all the cir-

cumstances, then the law would not require of him the same degree of care and caution as it requires of a person who has ample opportunity for the full exercise of his judgment and reason, and if, under such circumstances, he erred in his judgment that would not constitute gross negligence.''

We agree that the above instruction is involved and complicated. It tends to invade the province of the jury on a question of fact. It was error to instruct that ''if, under such circumstances, he (defendant) erred in his judgment that would not constitute gross negligence''. We think much would depend upon the kind of judgment exercised. Was it such as an ordinarily prudent person would have exercised or was it the judgment of a speed maniac? The instruction might well have been misleading. It is well established that a person can not escape liability for the negligent operation of an automobile on the ground that he acted in an emergency if it appears that the emergency arose through his own negligence: Huddy Cyclopedia Automobile Law (9th Ed.) vol. 3-4, § 26; Blashfield Cyclopedia Automobile Law (Permanent Ed.) vol. 4, § 2343; 45 C. J. 713; *Washburn v. La May,* 116 Conn. 576 (165 Atl. 791); *Barcott v. Standring,* 163 Wash. 357 (1 P. (2d.) 213).

■ Defendant contends, however, that this assignment of error should not be considered for the reason that plaintiff failed to direct the attention of the court to the alleged erroneous legal principles involved. A careful consideration of the record convinces us that the court was duly apprised of the plaintiff's contention that this instruction was not a correct statement of the law. In the light of *Nickum v. Gaston,* 24 Or. 380 (33 P. 671, 35 P. 31), the general exception taken to the instruc-

tion in question was sufficient. In that case the court said:

"But when an instruction is challenged on the ground that it is not the law as applied to the facts of the case, we understand a general exception is sufficient. We know no rule of law requiring counsel in such case to embody in his objection an argument or the reason for his contention. It is sufficient to notify the court that he challenges the correctness of the law as stated by it in its instructions. When the charge, without asserting an erroneous proposition of law as applied to the case, is ambiguous, or is deficient in fullness, or does not go far enough, or is not sufficiently explicit, the party excepting should call the attention of the court to the particular grounds upon which he objects, so it may be corrected: Kearney v. Snodgrass, 12 Or. 317 (7 Pac. Rep. 309). But when an erroneous proposition of law is asserted, as applied to the case on trial, it is sufficient to except generally, because in such a case the supposition is that the question has been previously fully argued and presented, and the court's opinion formed, and that it would not be modified or changed by again calling its attention to the particular reasons or grounds upon which counsel contends the instruction to be erroneous."

■ Assuming that error was committed, it does not follow that the judgment should be reversed. It is doubtful whether the evidence tending to support the charge of gross negligence is sufficient. Plaintiff had been the guest of the Kings on several prior automobile trips. On the occasion in question, King was driving on the trunk highway leading from Portland to Beaverton. When he had just entered the corporate limits of this small city, an automobile driven by one Curletto came into the main highway from Cedar street and a collision occurred. Plaintiff testified that King was driving about 55 miles an hour. The great weight of evidence, however, is that defendant was going about

30 miles an hour. King swerved to the side of the pavement into the loose gravel to avoid the impact and the car turned over thereby injuring the plaintiff. Plaintiff said that the defendant's car was about 185 to 200 feet distant from the intersection of Cedar street and the main highway when she saw the Curletto car approaching the intersection and that it was about six or seven feet from the pavement. The record discloses the following part of her testimony on cross-examination:

"Q. And then what did Mr. King do? A. Well, just then, it seemed like that second Mrs. King says: 'Oh, Matt, look out;' and, of course, I, looking straight ahead, couldn't help but see this other car crossing the highway or getting into the highway.

"Q. It was crossing the highway at that time? A. Yes, it was in the highway just as she said it, and then our car went off like that (indicating), the first thing I noticed, in the gravel, and then Mr. King started doing this (indicating), you know, I suppose, over his head.

"Q. How far back would you say Mr. King was from that intersection when he started to do that? A. Well, about 140 or 50 or more feet.

"Q. About a hundred and forty or fifty or more feet he took his hands off the steering gear and started to pull his coat up over his head like that (indicating)? A. Yes; so the car went out in the gravel and started, seemed to make a kind of leap or something, I can't explain it.

"Q. And his car continued coming as hard as ever, all while he had his hands off the steering gear? A. He pulled his coat over his head.

"Q. As far as you know he never put his hands back on the steering gear? A. As far as I know, he didn't.

"Q. And he started to pull his coat over his head about a hundred and fifty feet from the intersection? A. As soon as she said, 'Oh, Matt, look out.'

"Q. And the other car was crossing that intersection at that time? A. Yes."

Needless to say, such testimony is highly improbable and unreasonable. In the original complaint, the plaintiff alleged negligence on the part of Curletto. It is not charged that defendant was intoxicated or that he intentionally injured the plaintiff. Under this state of the record, the court is constrained, in the interests of justice, to affirm the judgment in favor of defendant, notwithstanding such error in the instructions.

There are other assignments of error but counsel for plaintiff in oral argument waived them as being of no consequence. Hence, we shall not discuss them.

The judgment of the lower court is affirmed.

ROSSMAN, J., not sitting.

BEAN, J., dissents.